Bradley, J.
The plaintiffs conveyed to . one Zink certain premises situate in the city of Buffalo, and took from him a mortgage, of date November 20, 1871, to secure $3,500, of the purchase money. And they conveyed to James S. Lyon, certain other premises in. the city, and took from him a mortgage to secure the payment of $30,000, of the purchase-money.
The proceedings to condemn property for the purpose of, and to open tire avenue, were accomplished in the fall of 1873, and portions of the lands covered by both mortgages were taken, for which the awards in question were made by the city. The orders for the amounts of four of these awards on the city treasurer were delivered by the comptroller of the city to Bork in July, 1874. And the main question submitted to the jury was whether he had authority from the plaintiffs to obtain such orders. For the support of such authority, reference is made to an unproduced letter which the comptroller of the city says purported to have been written by Fincke, addressed'to James S. Lyon, or to Lyon and Co; that it was brought to him in July, 1874, by Bork, who was then city treasurer, and on the-strength of the letter he endorsed and delivered the awards or warrants to Bork, who took them and retained the letter; that he read only a portion of the letter and is unable to state its contents, and was unacquainted with the handwriting of Fincke. Bork testified that he got the warrants of the comptroller, and his impression is that he got them on a letter from Fincke to Lyon directing a delivery ” He is asked: “ Can you state the contents of that letter ? — Ans. I cannot. Ques. Can you state the *239 contents of that letter so far as it related to tbe awards ? — Ans. No, sir. Ques. Can yon state generally tbe contents of that letter ? — Ans. No, sir, I cannot.” And on being recalled and asked if he can state the substance of the letter he answers : “ Only generally, as I stated it,” and being then asked: “ State the substance of the letter if yon can. ” he answers : “ I couldn’t say anything more. I don’t think I could give you a word of it.” ' The letter was’ not produced, nor did it appear what had become of it.
Mr. Fincke testifies that he never authorized any one to get the awards or warrants for him, that he never wrote any letter to Lyon or Bork or to anybody else to get them, or any of them, or to receipt for the money. And Lyon testifies that he never received any authority from the plaintiffs or from Fincke, to draw the awards, that he did write to Fincke in relation to the award to the latter as mortgagee of the premises of which Lyon had the legal title, and received from him a letter in answer declining to give authority to draw the award, and referring to his relation of executor or trustee. This is substantially the evidence bearing directly upon the question of authority. The comptroller undoubtedly understood in some manner when he delivered the warrants to Bork, that the letter then produced contained direction or authority to do so. He says his recollection is that Bork read the portion of it referring to the awards, that he saw some portion and thinks one third of it, but cannot state contents “ excepting referring to the awards,” by which he meant to be understood that reference was made in it to the awards.
This evidence is of itself feeble, but reference is made to the fact that the awards had then remained in the comptrollers office uncalled for several months, and that Fincke did not call for them until several years thereafter as some evidence in support of the authority exercised in obtaining the warrants from the comptroller.
Mr. Fincke testifies on this subject that while he learned, the city was taking some of the premises for a public improvement, and supposed that awards would be made for the benefit of the plaintiffs by way of compensation, he had no notice of the awards until he went to the comptroller’s office in 1877, or 1878, and asked for them, when he was advised that the awards had been paid. And on investigation then made, he learned they had been receipted with the signature of Bork, which was the first knowledge he had of the awards.
There was some evidence tending to prove that Fincke was in the comptroller’s office two or three times a year, in 1874-5, looking over tax records, but it does not appear that this improvement or the awards was then the subject of inquiry or remark.
*240 The plaintiff Finche had had some business relations with Lyon, Bork & Co., of which Lyon and Bork were members arising out of the collection of rents by the firm for him. Three of the awards were made on account of taking portions of three several lots embraced in the premises of which Lyon had taken title from the. plaintiffs, and given to them a purchase money mortgage of $80.000. Those premises were known as the Mann and Lord property, with which was kept an account in behalf of Lyon in the office of Lyon, Bork, & Co., and the proceeds of the awards were credited in that account to that property. There is no evidence that Fincke’s attention was ever called to ' this until disclosed by his investigation before referred to, although there is evidence tending to prove that he was in the city several times in each of the years 1874, 1875- and 1876, and had some business with the firm. The only interest the plaintiffs had in the property covered by the Lyon mortgage, was that given by such instrument, added to which was the personal liability of Lyon to pay the money secured by it. And if the moneys had been fully paid, the matters of the awards in respect to that property would have been of no practical importance to the plaintiffs, but the appropriation of the portion of thepremis.es taken by the city depreciated to that extent the security furnished by the mortgage. The firm of Lyon, Bork & Co., failed in the latter part of the year 1875, and Lyon was then insolvent. The fact of the-personal liability of Lyon to pay the mortgage, furnishes of itself no evidence of authority to take and appropriate the awards, but might have some force with other circumstances tending to support such authority as the amount of them would, if received by the plaintiffs, enure to his benefit by way of allowance on the purchase money mortgage debt, in the event he had paid the residue of it.
But this relation did not apply to the two other awards made for taking portions of lots of the premises, which had been conveyed by the plaintiffs to Zink, who had given them in return a mortgage'on such premises to secure the payment of the purchase money for which the latter was personally liable. •
The warrants for these-awards were also take n by Bork, unless one of them had before been taken by Lyon from the comptroller. One of thes'e latter awards was so taken by Bork with the three before mentioned.
The question of authority applies alike to those four without any means of distinction furnished; and is dependent upon the force given to the letter referred to, which Bork in his evidence, in general terms, treated as an order from Fincke to Lyon, to obtain the awards.
- This other or fifth one was not obtained at the same time, but was taken' from the comptroller’s office before the letter was produced. Bork says he got this one (which was $360) in De *241 cember, 1873. This was before the' letter was received, and there is no evidence of any authority then from Fineke. The comptroller took receipts which were produced, for the four warrants taken in July, 1874, but no receipt was found for the other one. The main question submitted to the jury was whether any authority from the plaintiffs permitted the delivery of the warrants to Bork, or to Lyon, Bork & Co. We think the conclusion of the trial justice, that the verdict was against the weight of evidence, was justified, and that in granting a new trial his discretion was not improperly exercised.
When carefully examined, the evidence, so far as it directly bears upon the import of the letter in respect to any authority or direction contained in it, to obtain from the comptroller the warrants representing the awards to the plaintiffs is very vague, and the inference that it did contain such authority derivable from such evidence and all the circumstances, was so weak as to permit the trial judge to fairly conclude that the fact was not satisfactorily proved, and that injustice had been done by the verdict, so far as it depended upon the evidence on that question.
The defendant’s counsel contends that the plaintiffs were not entitled to recover, because the foreclosure of the mortgages made to them by Lyon & Zink, cut off the right of the defendant to the portion of those lands which the defendant had proceeded to take, and barred all the rights derived from such proceedings. And this is urged upon the ground that the title had not become entirely perfected in the city, because the money, unless taken by plaintiffs’ authority, had néither been paid nor deposited within the meaning of the Statute, Charter title VIII. §§ 15, 16, 18.
The foreclosure of those mortgages were by actions. The city of Buffalo was made a party defendant. The judgments were recovered in September and October, 1877. They were in the usual form, and adjudged that the defendants “ be forever barred and foreclosed of all right, title, interest” etc., in the premises. It will be observed that the 'proceedings of the city were taken and completed long before the foreclosure actions were commenced. And the confirmation of the commissioner’s report in such proceedings was made more than a year before that time, which perfected the right of the plaintiffs to the amount of the awards and the liability of the city to pay them. Id, § 15. Whatever interest the city had acquired by means cf the exercise of this right of eminent domain, was paramount to the lien of the mortgages, and would not be affected by the judgments in those actions, and the sales pursuant to them, unless those proceedings and their result were there made the subject of attack for some alleged cause, with a view to remove the color of title or right produced by them. 2 R. S. 192, § 158, Lewis v. *242 Smith, 9 N.Y., 502, affirming 11 Barb,152; Rathbone v. Hooney,58 N. Y., 463; Emigrant Industrial Savings Bank v. Goldman, 75 N. Y., 127. The foreclosure actions did not proceed in hostility to, or challenge such proceedings and their validity and effect, but on the contrary it was in the complaints of those actions alleged, that the city had acquired title, arid the lands so taken had become part of a public avenue of the city. The right of the defendant acquired by the proceedings to take the property does not seem to have been affected by the judgments and sales in the foreclosure actions. And assuming that it has not paid the awards to any party entitled to receive payment no reason appears why it should not do so.
No other question seems to require the expression of consideration.
The order should be affirmed.
Smith P. J., Barker and Haight JJ., concur.